[Crim. No. 7666. Second Dist., Div. Two. Mar. 1, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN WILLIAM McCAIN, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant was convicted after a non-jury trial of violation of section 288, Penal Code, commission of lewd and lascivious acts upon the body of a child under 14— a boy of the age of 11 years. The facts present one of the familiar variations of the man and boy pattern which finds many examples in the official reports. Defendant appeals from the judgment, an order denying his motion for new trial and an order committing him to Atascadero State Hospital as a probable sexual psychopath.

 The first point urged by appellant is violation of section 868, Penal Code,[1] at the preliminary hearing in that the court declined to exclude from the hearing the investigating officer, J. W. Morrill. He was also the person who signed the complaint and the trial judge ruled that he was the prosecutor and hence within the exception to section 868.

*People* v. *Elliot,* 54 Cal.2d 498, 504-505 [6 Cal.Rptr. 753, 354 P.2d 225], holds that compliance with the statute is mandatory and violation of its provisions constitutes a denial of a fundamental right and hence works a miscarriage of justice. In *People* v. *Prizant* (November, 1960) 186 Cal. App.2d 542, 544 [9 Cal.Rptr. 282], it was held that the investigator who did not have the defendants in custody was not the prosecutor; that the prosecuting witness was the prosecutor within the statute. Upon this point one justice dissented at

---

[1] Pen. Code § 868: "The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, . . . the prosecutor and his counsel, the Attorney General, the district attorney of the county, the defendant and his counsel, and the officer having the defendant in custody; *provided, however,* that when the prosecuting witness is a female she shall be entitled at all times to the attendance of a person of her own sex."

page 548. However, the Supreme Court denied a hearing. The majority opinion says, at page 544: "At the time of the preliminary all defendants were on bail and consequently they were not in custody of the investigator who was permitted to remain, or of any officer. The 'prosecutor' or 'prosecuting witness' was Evelyn Morgan, not the investigator. For the error in permitting the investigator to remain in the courtroom during the preliminary hearing the judgments must be reversed." At page 546: "It may be that district attorneys do sometimes need the assistance of investigators or police officers in the presentation of the People's cases. It may even be that in exceptional cases they could receive assistance from not merely one, but several investigators or officers. The assistance of medical experts or ballistic experts might be desirable at times, but these are not matters for the courts. As the section reads the district attorney has the assistance of the prosecuting witness. The mandate of the statute is clearly expressed in a manner that leaves no doubt as to its purpose. Nothing can be added to or taken from its plain provision except by legislative action." (It is interesting to note that the 1961 Legislature amended the section by inserting the phrase "the investigating officer" immediately after "the district attorney of the county," thus reversing the *Prizant* case with respect to future hearings.)

*Prizant* seems to be the only case dealing with the specific point in this state, but it finds considerable support elsewhere. Ballentine's Law Dictionary, page 1038, defines "prosecutor" as "[a] prosecuting or complaining witness who instigates a criminal prosecution; a prosecuting or district attorney...." 22 Corpus Juris Secundum section 305, page 798: "'Prosecutor' defined. A 'prosecutor' has been defined as one who instigates a prosecution, by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based...." 50 Corpus Juris page 797: "Prosecutor. One who prefers an accusation against a party whom he suspects to be guilty; one who instigates the prosecution upon which accused is arrested; one who instigates a prosecution, by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based; one who institutes the prosecution by making the affidavit upon which a defendant is arrested; one who voluntarily makes an affidavit to procure

the issuance of a warrant to arrest a party whom he accuses of a crime. . . ."

The statute itself points to the same conclusion. The section expressly exempts from the exclusion "the prosecutor and his counsel, the Attorney General, the district attorney of the county . . . the officer having the defendant in custody." Clearly the prosecutor is someone other than the official prosecuting officer—district attorney or Attorney General—for the purposes of this section and the prosecutor would seem to be the complaining witness, the signer of the complaint, the person who is in possession of facts which presumptively enable him to assist the district attorney. Section 7 of the Penal Code says, in subdivision 16: "Words and phrases must be construed according to the context and the approved usage of the language; . . ."

The holding in *Prizant* seems clearly correct but it does not support appellant's position at bar, for Officer Morrill was not only the investigating officer but was also the complaining witness and as such entitled to remain during the hearing under the rule that the prosecuting witness is the "prosecutor" within the meaning of the statute.

█ Appellant's second point is that the court erred in permitting the boy to testify that he immediately told his father most of what had occurred and the father to say that the boy told him something of what occurred; that this was conclusion and that the conversation if repeated would be hearsay. The underlying thought seems to be that all the law permits is the bare fact that a complaint was made, but it seems evident that there must be something to show what the complaint was about or it has no significance. At any rate, there was no prejudice at bar. On this subject see, Fricke on California Criminal Evidence (5th ed.) pages 55-56, and *People* v. *Huston,* 21 Cal.2d 690, 694 [134 P.2d 758].

Prior to trial a motion for discovery was granted. The order embraced a certain police report of Officer Morrill, copy of which was furnished to defendant's attorney. But it appeared at the trial that an endorsement had been made upon it which did not appear on defendant's copy. That endorsement read: "8-17-60, 3:30 P. M. Defendant pruning hedge on east side of house using large pruning shears" (which had a bearing upon defendant's claim that he had a swollen hand at the time of the alleged crime, August 14, 1960). █ The court received Morrill's testimony about the incident mentioned in the endorsement, then struck the same, saying, "I

will strike it and will not consider it in my analysis of the case at the end." Again, in reviewing the facts after conclusion of argument, the judge said: "In this matter, I am excluding all question of what happened about him cutting any hedges or whether his hand was swollen the next day or some other day. I would find that his hand was swollen because the father said so and I believe that that is true." The contention that he could not do so because, having heard the evidence, he could not strike it from his mind, proves sterile.

Pursuant to section 5501, subdivision (c), Welfare and Institutions Code, the court instituted a psychopathy proceeding and appointed two psychiatrists, Drs. Karl O. Von Hagen and George Y. Abe, "to make a personal examination of the alleged sexual psychopath, directed toward ascertaining whether the person is a sexual psychopath." (Welf. & Inst. Code, § 5504.) Section 5503.5 requires reference of the matter to the probation officer "to investigate and report to the court within a specified time, upon the circumstances surrounding the crime and the prior record and history of the person. The report shall include the criminal record, if any, of the person, obtained from the State Bureau of Criminal Identification and Investigation. The probation officer shall furnish to the psychiatrists pertinent information concerning the circumstances surrounding the crime and the prior record and history of the person." Section 5505: "Each psychiatrist so appointed shall file with the court a separate written report of the result of his examination, together with his conclusions and recommendations. At the hearing each psychiatrist shall hear the testimony of all witnesses, and shall testify as to the result of his examination, and to any other pertinent facts within his knowledge." Upon the basis of the probation report, the testimony of the witnesses, his own examination and any other pertinent facts within his knowledge, each psychiatrist must make and file a written report. All this was done in the present instance. Each report was received in evidence and it was stipulated that the psychiatrist would testify in accordance with his own report. He was then examined by defendant's counsel who laid his entire emphasis upon the fact that each of the experts had read the transcript of the preliminary hearing and believed the same.

The argument is that this was wrong because there was no confrontation of the witnesses and opportunity to examine them in the presence of the doctors. No supporting authority

is cited by counsel. Of course this whole proceeding arises only after conviction and the expert should know the circumstances surrounding the crime. That information is furnished in the probation officer's report which consists almost entirely of hearsay and ex parte statements. Each expert was entitled to consider also "any other pertinent facts within his knowledge." No witnesses other than the doctors were examined at the psychopathy hearing. The probation officer's report may have been unsatisfactory to these experts or it may have been purely cumulative. There is no discernible reason why they could not go to the original source of information of the details of the crime—the testimony at the preliminary hearing. All of the witnesses there heard presumably were fully examined to such extent as counsel saw fit to pursue the matter. (The probation officer's report, the psychiatric reports and the preliminary transcript have not been placed before this court.)

The reference in section 5505 to the experts hearing all of the witnesses points obviously to those called at the psychopathy hearing, and there were none other than the experts at this hearing. No claim of invalidity of the statutes is made and, as this hearing was but a civil proceeding ancillary to the criminal prosecution (*Gross* v. *Superior Court*, 42 Cal.2d 816, 820 [270 P.2d 1025]), not by way of additional punishment for the crime (*In re Keddy*, 105 Cal.App.2d 215, 217 [233 P.2d 159]), and designed only to determine whether defendant is a probable sexual psychopath in need of observation and perhaps treatment (§ 5512), there plainly appears to be no substance to the claim of error in entertaining evidence of what the experts read in the preliminary transcript about the circumstances of the crime. (Cf. *In re Mundy*, 97 N.H. 239 [85 A.2d 371, 373-375].)

The trial court defined his holding as follows: "I will find from the doctors' reports and the other testimony that he is a probable sexual psychopath. I will order him sent to Atascadero for the ninety day observation period provided by law, and a report to be made back to me as soon as it is determined within that period what his status is."

It appears that this hearing was concerned with two similar crimes committed by appellant. He had been convicted in Judge Vasey's court of a like offense against an 8-year-old boy. By stipulation of counsel and consent of both judges the two psychopathy matters were heard by Judge Fred Miller, the trial judge in the instant case. His finding of probable

sexual psychopathy is adequately supported by the record before us.

The judgment and orders are affirmed.

Fox, P. J., and Herndon, J., concurred.